Charles BOOKER, Plaintiff,

v.

GEORGIA–PACIFIC CORPORATION, Defendant.

No. C–C–85–546–M.

United States District Court,
W.D. North Carolina,
Charlotte Division.

June 23, 1988.

Michael Sheely, Charlotte, N.C., V. Henry Gransee, Jr., Employment Sec. Com'n of N.C., Raleigh, N.C., for plaintiff.

Robert H. Buckler, Alston & Bird, Atlanta, Ga., John R. Wester, Robinson, Bradshaw & Hinson, Charlotte, N.C., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

McMILLAN, District Judge.

### FINDINGS OF FACT

1. Plaintiff Charles Booker, a black man, filed this action on September 24, 1985. Plaintiff alleges that defendant Georgia–Pacific Corporation terminated plaintiff's employment on account of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Section 16 of the Civil Rights Act of 1870, 42 U.S.C. § 1981.

2. Defendant is a Georgia Corporation which employs more than fifteen employees and is engaged in interstate commerce.

3. Defendant is doing business in Charlotte, North Carolina and is subject to the jurisdiction of this court.

4. Plaintiff was hired on July 12, 1982, at the defendant's distribution center in Charlotte, North Carolina, to drive a tractor-trailer rig transporting building materials.

5. On October 12, 1984, plaintiff was assigned a delivery and pickup in Matthews, North Carolina.

6. On October 12, 1984, defendant's operations manager, Cherie Steele, was driving to work north on Highway 521 (Pineville Road) when she noticed a fully loaded Georgia–Pacific truck on the side of the road heading south. Ms. Steele saw no visible signs of anyone in or around the vehicle or in the immediate area. She stopped at a pay telephone nearby to call the distribution center to inquire about the truck.

7. Ms. Steele was informed by the office that there had been no trouble calls about the truck and that according to the trips that were posted, no truck should have been in that area. She returned to the site where the truck was parked to investigate further.

8. After Ms. Steele had parked her car and was approaching the truck, she saw the plaintiff rise from the driver's seat. Plaintiff told Ms. Steele that he had a flat tire and had reported it to defendant's warehouse supervisor, Mike Bost. Plaintiff also told Ms. Steele that the Goodyear Tire Company was on the way and that he did not need any help.

9. Ms. Steele returned to the pay phone and telephoned Steve Adkins, defendant's salesman at the distribution center. She told Mr. Adkins of her conversation with plaintiff and requested Mr. Adkins to pass the information along to Mr. Bost.

10. Mr. Adkins advised Mr. Bost of the matter a few minutes later. At this point, Mr. Bost stated that he had not heard from plaintiff and was unaware of any problem.

11. When Ms. Steele arrived at the distribution center, she learned that plaintiff had just called for the first time and reported the problem to Mr. Bost. Plaintiff had reported to Mr. Bost that he was then on Highway 51 in Matthews, North Carolina with a flat tire. This location was approximately six to eight miles away from the Pineville Road site where Ms. Steele had seen the truck. When plaintiff was asked why he was on Highway 51 when he had earlier been seen on Pineville Road with a flat tire, he replied that he had moved because he wanted to get a cup of coffee. He offered no explanation why he had been on Pineville Road or why, if he had a flat tire on Pineville Road, it was necessary to drive the truck six to eight miles away from that point to get a cup of coffee. He also did not explain what he was doing when he was seen by Ms. Steele "relaxing" in his truck.

12. At Mr. Bost's request, the Goodyear Tire Store in Charlotte sent an employee to change the tire on the truck plaintiff was driving. The tire had eleven nails in it and the sidewall was cut. Consequently, the tire had to be replaced rather than repaired.

13. Later that day, at approximately 5:30 p.m., plaintiff returned to the distribution center. At that time he was terminat-

ed for a "dishonest action involving company time and equipment and false statements made to management and personnel."

14. Plaintiff filed a grievance through his Union, The International Brotherhood of Teamsters. A hearing was held before an arbitrator on December 19, 1984. Plaintiff claimed that he was discharged because of his race. The arbitrator found that the discharge was for just cause within the provisions of the collective bargaining agreement and sustained the discharge.

15. On or about March 7, 1985, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("the EEOC"). On or about June 28, 1985, the EEOC issued a determination that no reasonable cause was found to believe that the allegations in the charge were true and terminated its investigation of the charge.

16. Wayne Bryant, a white man, worked for defendant as a temporary driver. Mr. Bryant was hired through a temporary employee agency.

17. While driving a truck in the course of performing defendant's business, Mr. Bryant left his designated route for personal reasons unrelated to the performance of his work for defendant.

18. Defendant's employees were aware of this incident when Mr. Bryant was subsequently hired by defendant as a full-time employee.

19. There is no evidence in the record that the defendant had any basis for concluding that Mr. Bryant was dishonest in reporting the incident to defendant.

20. Plaintiff was not terminated because of his race. Defendant terminated plaintiff because defendant reasonably believed that plaintiff gave false statements regarding the reasons for his whereabouts and activities on October 12, 1984.

## CONCLUSIONS OF LAW

1. All parties are properly before the court. The court has jurisdiction of the action under 42 U.S.C. § 2000e–5(f) and 42 U.S.C. § 1981.

2. The elements of the cause of action and the burden of proof in actions under Title VII and those under § 1981 are the same. *Gairola v. Commonwealth of Virginia Department of General Services,* 753 F.2d 1281, 1285–6 (4th Cir.1985); *Whiting v. Jackson State University,* 616 F.2d 116 (5th Cir.1980).

3. The burden of proving to the trier of fact by a preponderance of the evidence that the defendant intentionally discriminated against plaintiff rests with plaintiff at all times. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981).

4. To establish by circumstantial evidence a *prima facie* case of discrimination in a discharge action, plaintiff must show:

(1) that he is a member of a racial minority or other protected class;

(2) that he was qualified for his job and performing at a level that satisfied his employer's legitimate expectations;

(3) that he was discharged;

(4) that he was discharged under circumstances giving rise to a reasonable inference of intentional race discrimination, such as that he was replaced by a white employee, or that the position was left open after the discharge.

*Gairola,* 753 F.2d at 1286; *Smith v. University of North Carolina,* 632 F.2d 316, 332 (4th Cir.1980). Where plaintiff alleges that he was subjected to disparate disciplinary treatment resulting in discharge, plaintiff may demonstrate a *prima facie* case by showing that he engaged in prohibited conduct similar to that of a person of another race, and that disciplinary measures enforced against plaintiff were more severe than those enforced against the other person. *Moore v. City of Charlotte, North Carolina,* 754 F.2d 1100, 1105–6 (4th Cir.1985), *cert. den.,* 472 U.S. 1021 (1985).

5. Proof of a *prima facie* case of discrimination raises only an inference of discrimination and is not equal to an ulti-

**1072**

mate finding of unlawful discrimination. *Burdine*, 450 U.S. at 254–5, 101 S.Ct. at 1094–5; *Furnco Construction Corporation v. Waters*, 438 U.S. 567, 577–8, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978).

6. If plaintiff meets the burden of establishing a *prima facie* case, then defendant has the burden of articulating a legitimate non-discriminatory reason for terminating plaintiff's employment. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094.

7. The employer's burden of articulating a legitimate, non-discriminatory reason for its action does not require the employer to prove the absence of a discriminatory motive in order to rebut the *prima facie* case. The employer's burden is met if it produces evidence of legitimate, nondiscriminatory reasons in order to eliminate the inference of discrimination created by the *prima facie* case. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983); *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094.

8. In a case characterized by circumstantial evidence of discrimination, if defendant articulates a legitimate, non-discriminatory reason for the termination, plaintiff, in order to prevail, must prove by a preponderance of the evidence that the legitimate reasons offered by defendant were not the true reasons but were a pretext for discrimination. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095.

9. Once a suit has been fully tried on the merits, the trier of fact focuses on the question whether plaintiff has proven by a preponderance of the evidence that the employer engaged in intentional discrimination. *Aikens*, 460 U.S. at 715–16, 103 S.Ct. at 1481–82.

■ 10. Plaintiff produced no evidence that defendant made any statements indicating that race was a factor in the decision to discharge plaintiff. By failing to give a credible explanation for his actions and whereabouts on October 12, 1985, plaintiff failed to show that he was performing his job in a satisfactory manner. No disparate treatment of similarly-situated employees

was shown. Statistical evidence tendered at trial did not show race discrimination.

11. Defendant fully rebutted any inference of discrimination. Plaintiff failed to prove that defendant's legitimate, non-discriminatory reasons were pretextual. The court has considered the evidence as a whole and is persuaded that defendant did not discharge plaintiff on account of his race.

### JUDGMENT

For the reasons set forth above in the Findings of Fact and Conclusions of Law, it is

ORDERED, ADJUDGED AND DECREED that judgment be and hereby is entered in favor of defendant. Each party shall bear its own costs.